

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-23-00040-CV

---

MARK D. MATTLAGE-THURMOND AND ROBERT J. SNOWDEN, Appellants

V.

FIRST NATIONAL BANK OF MCGREGOR D/B/A
TFNB YOUR BANK FOR LIFE, DAVID LITTLEWOOD,
AND FRIEDRICH MATTHIES, Appellees

---

On Appeal from the 414th District Court
McLennan County, Texas
Trial Court No. 2020-3125-5

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

Mark D. Mattlage-Thurmond (Mattlage) and Robert J. Snowden (collectively Appellants) sued First National Bank of McGregor d/b/a TFNB Your Bank for Life (Bank), David Littlewood, and Friedrich Matthies (collectively Appellees) following a dispute over a series of loans obtained from the Bank. The trial court granted summary judgment in favor of Appellees and dismissed all of Appellants' claims. Appellants argue that the trial court erred by concluding, among other things, that their claims were barred by a prior settlement during bankruptcy proceedings.[1] Because we conclude that the summary judgment was proper, we affirm the trial court's judgment.

## I.  Factual and Procedural Background

This case is largely determined by its factual and procedural history. As a result, we recite it in detail.

Mattlage and Snowden owned a 185-acre tract of property located in McLennan County, Texas (Crawford Property), which they sought to develop as a men's retreat. *Mattlage-Thurmond v. First Nat'l Bank of McGregor*, No. 10-22-00019-CV, 2022 WL 4546902, at *1 (Tex. App.—Waco Sept. 28, 2022, no pet.) (mem. op.). To effectuate that goal, Mattlage and Snowden approached Matthies, the Bank's executive vice president, to inquire about refinancing the purchase-money mortgage on the Crawford Property and obtaining financing for the men's retreat. The Bank refinanced the mortgage and provided five short-term loans secured by the

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

Crawford Property and three other rental properties owned by Appellants. According to Appellants, "Matthies told [them] that the loans would be rolled into one loan with a long term amortization at the conclusion of the discussed construction."

Appellants "built a swimming pool and an apartment complex on the [Crawford] [P]roperty, and they partially completed the RV park. However, they could not complete the project in its entirety due to overspending and weather delays, amongst other issues." *In re Mattlage-Thurmond*, No. 22-50032, 2022 WL 3544393, at *1 (5th Cir. Aug. 18, 2022) (per curiam). They "nonetheless opened their venue to the public but were unable to realize their financial projections for revenues. The Bank tried to help by extending the notes' maturity and payment terms," but Appellants "were unable even to make interest-only payments on the notes."[2] *Id.*

As noted by the Waco Court of Appeals, because Appellants "eventually stopped making payments on the loans, . . . [the Bank] began the process for foreclosure of the [Crawford Property]." *Mattlage-Thurmond*, 2022 WL 4546902, at *1. "[O]n November 4, 2019, [Appellants] filed a voluntary Chapter 11 [bankruptcy] case" to stop the foreclosure sale. *In re Mattlage-Thurmond*, 2022 WL 3544393, at *1.

On February 26, 2020, after a settlement conference, the bankruptcy court entered an agreed order between Appellants and the Bank. Among other things, the agreed order recited that, as a result of the five short-term loans, "[the Bank] ha[d] a claim against [Appellants] in the

---

[2]On February 8, 2016, Appellants signed a $336,900.00 promissory note to the Bank that was set to mature on August 8, 2016, which provided for monthly interest-only payments ("the February 2016 Note"). The February 2016 Note was secured by a deed of trust in favor of the Bank on the Crawford Property.

amount of $1,174,085.35" and gave Appellants fourteen days to file any objection to the claim. The agreed order required Appellants to send the Bank "adequate protection payment from the cash flow of the Crawford Property in the amount of $3,000.00" per month and stated, "By August 1, 2020, all the [Appellants'] remaining obligations to [the Bank], including [another] September 2018 Note, plus non-default interest and all fees and expenses referenced herein, shall be paid in full."[3] Appellants were ordered to sign a deed in lieu of foreclosure to the Bank, and the terms of the agreed order provided that, on Appellants failure to comply with the obligations in the agreed order, "the automatic stay [would] be lifted to permit [the Bank] to file and record the Deed in Lieu."

Appellants failed to comply with the terms of the agreed order. On September 4, 2020, the Bank sent Appellants a notice of foreclosure on the Crawford Property.

In response to the Crawford Property foreclosure, on October 2, 2020, Appellants "filed suit in district court in McLennan County . . . asserting that there was an agreement to consolidate the construction loans." *Mattlage-Thurmond*, 2022 WL 4546902, at *1. Appellants' original petition asserted agency and respondeat superior[4] and contended that they closed on the loans because they relied on Matthies' statements, which they characterized as "[the Bank's]

___

[3]The September 2018 Note is the subject of our opinion on Appellants' appeal in cause number 06-23-00039-CV.

[4]The original petition stated,

> Whenever in this petition it is alleged that any Defendant did, or failed to do, any act, thing and/or omission, it is meant that Defendant itself or its agents, officers, servants, employees, vice principals, or representatives either did or failed to do such act, thing and/or omission, and it was done with the full authorization or ratification of Defendant, and/or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, vice principals, or representatives and/or with actual and/or apparent authority of Defendant.

4

representations." Appellants wrote that Littlewood, the Bank's president, informed them "that [the Bank] was not going to consolidate the loans despite their earlier promise to do so" and that Appellants "could [make] interest-only payments for one year and revisit" the consolidation issue, but were denied making interest-only payments for two years. Appellants also said that Littlewood told them they were "too old to operate a business" during a board meeting and that Matthies said the same thing in the Bank lobby. Based on the legal theory that Matthies and Littlewood were the Bank's agents, Appellants asserted causes of action against Appellees for common-law and statutory fraud, fraudulent inducement, intentional misrepresentation, unjust enrichment, breach of contract, defamation, tortious interference with a contract, and tortious interference with business relations and sought declaratory relief and a restraining order preventing the Crawford Property foreclosure.

The district court granted Appellants' requested temporary restraining order, prompting Appellees' motion to dissolve it because the Crawford Property was the subject of a pending bankruptcy and the bankruptcy court had already denied Appellants' request to delay the upcoming foreclosure "two days before filing [the district court] lawsuit." Appellees attached the bankruptcy court's order permitting foreclosure of the Crawford Property and argued that Appellants' claims were barred by res judicata. After filing an answer that raised, among other things, the affirmative defense of statute of frauds, Appellees removed the district court suit to bankruptcy court on October 30, 2020.

The bankruptcy court dissolved the district court's temporary injunction after noting that Appellants were sophisticated parties and that "all . . . of the promissory notes that initiated these

5

various [short-term] loans exclude[d] oral agreements" by containing the following terms: "THIS PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN BORROWER AND LENDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF BORROWER AND LENDER. THERE ARE NO UNWRITTEN ORAL AGREEMENTS." *See id.* at *1. On January 5, 2021, the bankruptcy court remanded Appellants' claims against Littlewood and Matthies, but further proceedings in the bankruptcy court, which impact the outcome here, continued.

On April 6, 2021, the Crawford Property was sold by foreclosure. On May 18, 2021, the bankruptcy court granted the Bank's motion for summary judgment against Appellants on their claims "for fraudulent inducement/intentional misrepresentation/common law fraud, statutory fraud, unjust enrichment, breach of contract, defamation, negligent misrepresentation, tortious interference with a contract, tortious interference with business relations, and requested remedies of damages, attorneys' fees and costs, declaratory relief, accounting, and specific performance."[5] Appellants "appealed the bankruptcy court's [summary judgment] order . . . to the United States District Court for the Western District of Texas in Waco," to no avail. *Id.* at *1. They again appealed to the Fifth Circuit, which found, "To the extent [Appellants] assert that they are entitled to equitable relief, they have provided no legal basis to support this contention. . . . The bankruptcy court held hearings, reviewed the evidence on multiple occasions, and determined that . . . the statute of frauds barred the[ir] claims." *In re Mattlage-Thurmond*, 2022 WL

---

[5]These were the same claims raised against the Bank in the original petition in this case.

3544393, at *2. As a result, the Fifth Circuit affirmed the summary judgment in August 2022. *Id.*

Appellants also appealed the bankruptcy court's orders that (1) denied them leave to file amended claims and (2) granted the Bank's motion for summary judgment on the ground that res judicata barred any claims that could have been raised by Appellants.[6] The Fifth Circuit affirmed the bankruptcy court after finding that res judicata applied because the agreed order "bar[red] subsequent claims." *Id.*

On October 19, 2022, Littlewood and Matthies moved to dismiss the claims against them for want of prosecution. Because the motion to dismiss was unsuccessful, they amended their answer to include res judicata as an affirmative defense.

On February 8, 2023, Littlewood and Matthies filed traditional and no-evidence motions for summary judgment. Among other things, Littlewood and Matthies argued in the traditional motion that they had conclusively established the res judicata defense because the claims against the Bank were adjudicated by the bankruptcy court and Appellants' claims against Littlewood and Matthies "ar[o]se as a result of them being officers and employees of the [B]ank." The motion also argued that Appellants had no evidence of essential, required elements on their causes of action.

In their response to the summary judgment motion, Appellants argued that their claims were not barred by res judicata because the bankruptcy proceedings were only between them and

---

[6]The bankruptcy court said, "I'm going to grant summary judgment to the Bank on their motion and deny the motion to amend the pleadings because basically what they're asserting is more defensive causes of action counterclaims which are barred by res judicata."

7

the Bank, not Littlewood and Matthies. They also asserted that, "but for Matthies' misrepresentations on consolidating the loans, [Appellants] would not have entered into the contracts with [the Bank] or agree[d] to make interest only payments on the loans for a year."[7]

On February 28, 2023, before the trial court could rule on the summary judgment motion, Appellants amended their petition to remove the agency and respondeat superior language from their original petition. While the original petition for common-law fraud and intentional misrepresentation said that the Bank, "through its agent Mr. Matthies, fraudulently made material representations" regarding consolidation of the loans, the amended petition, which added a claim for negligent misrepresentation, simply said that "Matthies made [these] oral representations outside of the scope of his employment."[8] While the defamation allegation in the original petition, which was based on statements that Appellants were too old to operate a business, claimed that the Bank was "liable for Messrs. Littlewood and Matthies' statements because they were acting in their official capacity during the time the statements were made," the amended petition claimed that the remarks were "outside their scope of employment." The amended petition also dropped Appellants' claims of statutory fraud, fraudulent inducement, unjust enrichment, breach of contract, tortious interference with a contract, and tortious interference with business relations as well as a request for declaratory relief.

---

[7]Appellants' summary judgment response included Matthies' deposition, which stated, "[W]e have also explained that many times, that we did intend for them to complete the projects and, when they got through, that their cash flow per month would allow us to set it on a long-term path; but that never came to fruition."

[8]The original petition was verified by Mattlage, who declared under penalty of perjury that the facts provided in the original petition were within his personal knowledge and were true and correct. The amended petition was unverified.

Following a hearing, the trial court granted the Bank's summary judgment and dismissed all of Appellants' claims, with prejudice.

## II. Standard of Review

"We review a trial court's summary judgment de novo." *Mattlage-Thurmond*, 2022 WL 4546902, at *4 (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). Where, as here, "the order granting the summary judgment does not specify the grounds upon which judgment was rendered, we must affirm the summary judgment if any of the grounds in the summary judgment motion is meritorious." *Lotito v. Knife River Corp.-S.*, 391 S.W.3d 226, 227 (Tex. App.—Waco 2012, no pet.) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

Here, we find dispositive the issue of whether the trial court properly granted the traditional summary judgment on Appellees' res judicata defense. "The movant in a traditional summary judgment motion must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *Mattlage-Thurmond*, 2022 WL 4546902, at *4 (citing TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). "We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion." *Id.* "In our review, we take the nonmovant's competent evidence as true." *Id.* (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005)).

## III.    Res Judicata Barred Appellants' Claims

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).    For this reason, "[r]es judicata, sometimes referred to as claim preclusion, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Flying Diamond-W. Madisonville L.P. v. GW Petroleum, Inc.*, No. 10-07-00281-CV, 2009 WL 2707405, at *6 (Tex. App.—Waco Aug. 26, 2009, no pet.) (mem. op.) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).    "When two successive suits seek recovery for the same injury, 'a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit.'" *Id.* (quoting *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 564 (5th Cir. 1983)); *see Comer*, 718 F.3d at 467 ("[E]ven if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, *so long as the judgment in the first suit remains unmodified*." (alteration in original)).

In its traditional motion, Appellees argued that the plaintiffs' claims were barred by res judicata because of the agreed order and the bankruptcy court's summary judgment based on the statute of frauds.    "Because the issue is whether the federal bankruptcy court order bars the [plaintiffs'] claims in state court, the federal law of res judicata controls." *Mitchell v. Fort Davis State Bank*, 243 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.) (citing *Geary v. Tex. Com.*

10

*Bank*, 967 S.W.2d 836, 837 (Tex. 1998) (per curiam) ("since bankruptcy is a federal proceeding, federal law controls whether res judicata will bar a later state court proceeding")); *see Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001).

"A bankruptcy judgment bars a subsequent suit if: (1) both cases involve the same parties; (2) a court of competent jurisdiction rendered the prior judgment; (3) the prior decision was a final judgment on the merits; and (4) the same cause of action is at issue in both cases." *In re Mattlage-Thurmond*, 2022 WL 3544393, at *3 (citing *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990)).

As for the first requirement, the Fifth Circuit has explained "that 'parties' for purposes of res judicata does not mean formal, paper parties only, but also includes parties in interest, that is, that persons whose interests are properly *placed before the court* by someone with standing to represent them are bound by the matters determined in the proceeding." *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994) (quoting *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990)). In other words, "[t]he doctrine of res judicata . . . bars a second action by parties and their privies on matters actually litigated in a previous suit, as well as claims '"which, through the exercise of diligence, could have been litigated in a prior suit."'" *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2006) (quoting *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992)). The Fifth Circuit has noted "that directors, officers, and employees of a company are in privity with the company for purposes of res judicata." *Grynberg v. BP, P.L.C.*, 527 F. App'x 278, 282 n.4 (5th Cir. 2013) (per curiam) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986)); *see Sacks v.*

11

*Tex. S. Univ.*, 83 F.4th 340, 346 (5th Cir. 2023) (per curiam) ("A vicarious liability relationship between an employer and employee can create the requisite privity here.") (citing *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288–89 (5th Cir. 1989)); *see also Wang v. The Prudential Ins. Co. of Am.*, No. 3:09-CV-1309-O, 2010 WL 2000521, at *1 (N.D. Tex. May 18, 2010) (order), *aff'd sub nom Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x 359 (5th Cir. 2011) (per curiam), (citing *Lubrizol Corp.*, 871 F.2d at 1288) ("Where an initial suit was filed against a corporation on the grounds of vicarious liability, the employees are in privity with the employer for purposes of *res judicata*.").

The record showed that Appellants filed their original petition against Appellees while a bankruptcy proceeding was pending. The original petition, which was verified, asserted that Littlewood and Matthies were acting within the course and scope of their employment when making representations about loan consolidation and alleged defamatory statements. Before the original petition was filed, Appellants had already entered into an agreed order. *In re Mattlage-Thurmond*, 2022 WL 3544393, at *1. The summary judgment evidence showed that Littlewood participated in the significant negotiations that led to the agreed order "(through counsel) in [his] capacity as [the Bank's] Chief Executive Officer]." Despite the agreement, Appellants had attempted to raise essentially the same claims "against the Bank based on alleged oral agreements to consolidate their short-term loans," in addition to a defamation claim. *Id.* Based both on the agreed order and the statute of frauds, the bankruptcy court ruled against Appellants on their claims, and its judgment was affirmed on appeal.

12

Even so, Appellants argue they should be able to raise essentially the same claims because the same parties were not involved in the litigation. They reason that the agreed order was only between Appellants and the Bank and related only to the amounts owed to the Bank. Yet, Appellants raised objections to the Bank's bankruptcy claim on the ground that they "had pending claims against the Bank and did not owe any funds," including claims for fraud, misrepresentation, and defamation. *Id.* In other words, their objections to the Bank's claim were based on Littlewood's and Matthies' conduct. As a result, the claims against Littlewood and Matthies were incorporated into the bankruptcy proceedings, which were not merely about the amounts owed to the Bank. Instead, the bankruptcy proceedings considered Littlewoods' and Matthies' conduct and resolved the merits of several claims based on the statute of frauds, which Appellants do not address. In the bankruptcy proceedings, the Bank adequately represented Appellees' interests by defending the claims involving them and by filing motions for summary judgment in the bankruptcy court.[9] For these reasons, we conclude that Littlewood and Matthies were in privity with the Bank.

As for the second requirement, Appellants do not dispute that the agreed order or summary judgment based on the statute of frauds was entered by a court of competent jurisdiction.

---

[9]Appellants further argue that their amended petition clarified that their lawsuit was no longer against Littlewood and Matthies in their official capacities. Yet, Appellants' response to the summary judgment motions, and their summary judgment evidence, showed that conversations with Littlewood occurred because he was the Bank president, that conversations with Matthies occurred because he was the executive vice president for the Bank, and that Appellants imputed Littlewood's and Matthies's statements to the Bank. Even taking their amended petition as true, Appellants' claims in the bankruptcy proceedings were based on the same alleged conduct by Littlewood and Matthies.

13

As for the third requirement, "'an order allowing a proof of [a bankruptcy] claim is . . . a final judgment' for purposes of *res judicata*." *Id.* at *3 (citing *In re Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993)). Also, "an order granting relief from an automatic stay is a final and appealable order." *In re Chunn*, 106 F.3d 1239, 1241 (5th Cir. 1997). The "bankruptcy court's February 26, 2020[,] entry of the Agreed Order" acknowledged the Bank's claims and expressly stated that the parties agreed to pay them. *In re Mattlage-Thurmond*, 2022 WL 3544393, at *3. As a result, this constituted an order allowing the Bank's claim, which was a final judgment. *Id.* Moreover, the bankruptcy court entered a summary judgment on the merits of claims against the Bank involving Littlewood and Matthies based on the statute of frauds, and that summary judgment was affirmed on appeal.

Next, we address the last requirement of res judicata—whether the same cause of action was at issue in the bankruptcy proceedings. Federal courts apply "the transactional test of Section 24 of the Restatement (Second) of Judgments." *Id.* "Under that test, the preclusive effect of a prior judgment extends to all rights the original plaintiff had "'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.""" *Id.* (alteration in original) (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004) (quoting Restatement (Second) of Judgments § 24(1) (1982))). "The critical issue under this determination is whether the two actions under consideration are based on 'the same nucleus of operative facts.'" *Id.* at *4 (quoting *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 386 (5th Cir. 2000)). "[T]he type of relief requested,

substantive theories advanced, or types of rights asserted" are not the focus of this test. *Id.* (quoting *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007)).

Here, the Fifth Circuit has eased our analysis in this matter. Appellants raised defamation claims, which were resolved by the bankruptcy court via a summary judgment that was eventually affirmed by the Fifth Circuit. As noted by the Fifth Circuit, Appellants' claims, "all relate[d] to the parties' lending and borrowing relationship" and were based on the argument that the Bank "failed to consolidate said money as [Littlewood and Matthies] had [allegedly] previously orally agreed." *Id.* "In short, the 'factual predicate of the claims asserted' entirely revolve[d] around construction on the Crawford Property, the loans provided for the construction, the [Appellants'] obligations to pay back the loans, and the Bank's attempts to recover its money." *Id.* "Thus, the claims are the same under the transactional test, and the fourth element of *res judicata* is satisfied." *Id.*

We conclude that Appellees established the defense of res judicata as a matter of law. As a result, the trial court did not err by dismissing Appellants' claims.

## IV. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted: November 6, 2023
Date Decided: November 20, 2023

15